**ANDERSON–PRICHARD OIL CORPO-RATION, a corporation, Appellant,**

v.

**Fred A. SEATON, Secretary of the Interior, Herbert Brownell, Jr., Attorney General of the United States, Appellees.**

**No. 13526.**

United States Court of Appeals
District of Columbia Circuit.

Sept. 4, 1956.

O. R. McGuire, Jr., Washington, D. C., for appellant.

John F. Davis and George Swarth, Attys., Department of Justice, Washington, D. C., for appellees.

Before EDGERTON, Chief Judge, and WILBUR K. MILLER and BAZELON, Circuit Judges.

PER CURIAM.

This case came on for consideration on appellant's motion for an immediate hearing on its appeal from an order denying the preliminary injunction and for a decree setting aside said order and remanding the case to the District Court with directions to issue the injunction as prayed for in the complaint, and said motion was argued by counsel.

Upon consideration whereof, it is Ordered by the Court that the aforesaid appellant's motion be, and it is hereby, denied. United States v. Louisiana, 351 U.S. 978, 76 S.Ct. 1043.

WILBUR K. MILLER, Circuit Judge (dissenting).

Louisiana claims title to the submerged lands off her coast between the three-mile and three-league limits, and has executed oil leases to a number of lessees covering various portions of the area. The United States also claims ownership and has also executed many oil leases to other lessees. Out of more than 150 leased areas, there are only two or three on which a single lessee holds leases from both Louisiana and the United States. The appellant is one of these very few, and is said to be the only one of them who has kept both leases alive by paying delay rentals to both lessors.

The United States filed an Original Action in the Supreme Court against Louisiana to quiet its title to the entire submerged area. The State filed suit in its own court to enjoin the federal lessees from drilling. In the Original Action, the Government sought an injunction against the prosecution of the state court suit or any similar action, pending the Supreme Court's disposition of the basic title question. This relief was granted by the Court, 351 U.S. 978, 76 S.Ct. 1043, which added this paragraph to its order:

It Is Further Ordered that the State of Louisiana and the United States of America are enjoined from leasing or beginning the drilling of new wells in the disputed tidelands area pending further order of this Court unless by agreement of the parties filed here."

In the spring of 1956 Anderson-Prichard contracted with a marine drilling company to commence a well in the area on which it held subsisting leases from both governments. The State and the United States were then in dispute over ownership, but the appellant felt secure. Since it held leases from both contenders,

apparently it had a valid lease no matter how the question of title to the submerged lands might finally be determined. To be sure, a federal drilling permit had to be obtained, but no trouble on that score was anticipated as the issuance of a permit to a lessee is, the Government admits, a formality which occurs practically automatically.

Solely because of the second paragraph of the Supreme Court's order in the Original Action quoted above, the Secretary of the Interior and the Attorney General of the United States refuse to issue a drilling permit to Anderson-Prichard. Their counsel conceded on oral argument that, but for what they regard as the Supreme Court's prohibition against doing so, a drilling permit would be promptly issued; they said its issuance is a mere ministerial act.

In the meantime, the drilling contractor had moved or was about to move on location. I am not sure which, as I necessarily write hurriedly; but it is certain that the contractor is in a position where Anderson-Prichard is obliged to pay him standby charges in the sum of $4,400.00 per day. Moreover, the appellant's lease from Louisiana will expire by its terms December 27, 1956, if a well is not commenced by that time; in that event, Anderson-Prichard will lose its present favorable position as a "dual lessee," and will have no lease if title should be won by the State.

In these circumstances the dual lessee asked an associate justice of the Supreme Court (the Court being in recess) to modify or clarify the second paragraph of the Court's order. This was denied without opinion, but probably because the justice did not feel justified in modifying an order entered by the whole Court. A similar motion was presented to a second justice, who declined to disturb the action of his senior.

Anderson-Prichard then filed the present suit in the United States District Court for the District of Columbia, asking that the defendant officials be required to issue a drilling permit. That court thought itself bound by the Supreme Court's second paragraph and denied a motion for preliminary injunctive relief. Its order is here for review. My brothers think, as did the district judge, that the second paragraph governs the question here, and so affirm his holding. I dissent.

The parties agreed on oral argument that Anderson-Prichard's unique position as a dual lessee, whose right to the lease does not depend on the outcome of the litigation between its two lessors, was not drawn to the Supreme Court's attention at the hearing which was followed by the injunctive order. I think it reasonable to conclude that the Court was dealing with a situation in which, unless enjoined, either government might execute new leases or might authorize or permit its own existing lessees, each dependent for title on the title of its lessor, to begin drilling. Obviously unnecessary confusion and complications would result from the commencement and completion of wells by contending lessees, so the Court prohibited such drilling pending its decision as to title, unless it were done by agreement between the State and the United States.

I think we are free to construe the Supreme Court's decree in the light of the situation with which it dealt, and I see no reason to suppose the Court intended to cover a factual situation which was not presented to it. Since this dual lessee's title to a valid lease and its right to drill thereunder do not depend, as I have pointed out, on the ultimate decision in the Original Action as to which of its lessors has title, I cannot believe the injunctive decree was intended to prohibit it from drilling pending that decision. If the Supreme Court did not so intend, then its decree does not have that effect.

But, if the Supreme Court's second paragraph should be construed as prohibiting drilling by this dual lessee "unless by agreement of the parties [Louisiana and the United States] filed here," I suggest that those parties have in legal

effect already agreed. Both governments agreed that Anderson-Prichard might drill on the area involved when they executed leases to it. An oil lease is fundamental authority to drill. The federal drilling permit is concededly a mere formality, as I have said. So I think the parties have basically consented that this dual lessee may commence a well. The words "filed here" in the order do not trouble me, for the appellant's two leases may be quickly tendered for filing in the Original Action if they are not already there.

Either because, as I think, the Supreme Court did not enjoin drilling by a dual lessee such as this appellant, or, if I am wrong in that, because the lessors have consented to such drilling within the meaning of the injunctive order, I would reverse and direct the District Court to order the defendant officials to perform their admittedly ministerial duty of issuing a drilling permit. The order could require that the maximum royalty accruing from oil produced be deposited in the registry of the District Court pending the Supreme Court's decision as to which lessor is entitled to collect it. This would adequately safeguard the only possible interest that Louisiana and the United States have in the matter, and I do not see why either should object to such a provision in the order. Upon objection, however, I think it should be omitted, in which event the lessee would be required to pay royalties under both leases with the hope of ultimately recovering from the payee which loses the title contest in the Supreme Court. The lessee might prefer to make burdensome double royalty payments in order to avoid losing a lease said to be worth $4,500,000. The relief I suggest is not that expressly prayed for in the complaint, but I think it is within the prayer for general relief.

One more thing. The appellees say this is a suit against the United States to which it has not consented. This argument is not the "last refuge" of a

Government lawyer; it is usually his first. But in my view it is not valid here. We are considering a lessee's right to drill under a lease which the United States has already granted. The defendant officials simply refuse to implement that lease by performing a confessedly ministerial act. And they refuse only on the basis of what I think is the mistaken notion that the Supreme Court has told them not to perform it.